IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DANIEL A. PILOT,                  :
        Plaintiff,               :
                                 :
vs.                              :        CIVIL ACTION 16-00140-WS-M
                                 :
COMMISSIONER A.D.O.C.,*et al.*   :
        Defendants.              :
                                 :

**REPORT AND RECOMMENDATION**

Plaintiff Daniel Pilot, an Alabama prison inmate

proceeding *pro se* and *in forma pauperis*, filed a complaint

under 42 U.S.C. § 1983.  This action was referred to the

undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72(a)(2)(R), and is now before the undersigned on

Defendants' Motion for Summary Judgment.  After careful

review of the pleadings, and for the reasons set out below,

it is recommended that Defendants' Motion for Summary

Judgment be granted, and that Plaintiff Pilot's action be

dismissed with prejudice.

**I.   Summary of Allegations.**

Plaintiff Daniel Pilot is currently within the custody

of the Alabama Department of Corrections (ADOC) serving a

sentence of life without the possibility of parole for a

1990 murder conviction.  (Doc. 1 at 7).  He filed this suit

under 28 U.S.C. § 1983 alleging an excessive force

violation arising from a failed prison escape in 2014.

On November 10, 2014, at approximately 5:50 a.m.,
Pilot and three other inmates attempted to escape from
Holman Correctional Facility.[1]  (Doc. 4 at 4).  The inmates
were observed at the outer perimeter fence at the back gate
of the prison (having already broken through the first
fenced area).  (Doc. 25-1 at 1).  Sergeant Smith and
Officers Boudreaux, Pace, Turner, and Tait responded to the
attempted escape and ordered the inmates to surrender.[2]
(*Id.*).

Pilot alleges he complied with the order to surrender
(lying face down on the ground with his arms outward), but
despite his compliance, Sergeant Smith and Officer
Bourdeaux severely beat him while the remaining officers
watched.  (Doc. 4 at 4).  Pilot alleges he "screamed and
begged for his life as his finger [was] broken" and he was
"repeatedly struck with [a] baton and kicked in the head

---

[1]     At his disciplinary hearing for the charge brought
against him for the attempt to escape, Pilot testified, "I
am guilty.  I was trying to leave this prison.  I have been
locked up for 30 years and I am tired.  I don't want to die
here and I know the only way I will get out is to escape."
(Doc. 25-11 at 2-4).  Pilot's guilty plea was accepted and
he received disciplinary segregation for 45 days and loss
of canteen, telephone, and visiting privileges for 60 days.
(*Id.* at 3)

[2]     Pilot and two other inmates were located by defendants
at the back gate of the prison, attempting to escape
through a razor fence.  (Doc. 25-8 at 1).  There was,
however, a fourth inmate attempting escape who was
apprehended approximately five minutes after Pilot was
secured in restraints.  (Doc. 25-1).

until he passed out." (*Id*.).  Additionally, Pilot claims that, subsequent to the incident, he was taken directly to a segregation cell and was refused medical treatment for three days.  (*Id*. at 5).  As a result of the force used against him, Pilot alleges he suffered a broken right finger, bruised and cracked ribs, a busted right eardrum, lacerations to the head and face, a swollen right eye socket, a sprained right wrist, bruising of the entire right side of his body, and further complains that he continues to endure lasting consequences of severe headaches and pain in his right hand.  (Doc. 4 at 8).

Pilot is suing the Alabama Department of Corrections Commissioner Jefferson Dunn, Warden Walter Myers, Captain Ronzella Howard, Sergeant James Smith, Correctional Officer Jeff Pace, Correctional Officer Bryant Moore, Correctional Officer Johnnie Tait, and Correctional Officer Harry Boudreaux in their individual and official capacities for an Eighth Amendment violation of excessive force, failure to intervene, failure to train, and denial or delay of medical care.  (Doc. 4 at 1, 5-6, 9).  Pilot seeks monetary damages in the amount of $30,000.00 from each defendant for the alleged constitutional violations.

**II.  Summary Judgment Standard.**

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

> If a party fails to properly support an assertion
> of fact or fails to properly address another

party's assertion of fact as required by Rule
56(c), the court may:

(1) give an opportunity to properly support or
address the fact;
(2) consider the fact undisputed for purposes of
the motion;
(3) grant summary judgment if the motion and
supporting materials—including the facts
considered undisputed—show that the movant is
entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the
initial responsibility of informing the district court of
the basis for its motion, and identifying those portions of
'the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any,' which it believes demonstrate the absence of a
genuine issue of material fact." *Celotex*, 477 U.S. at 323.
The movant can meet this burden by presenting evidence
showing there is no dispute of material fact or by pointing
out to the district court that the nonmoving party has
failed to present evidence in support of some element of
its case on which it bears the ultimate burden of proof.
*Id*. at 322-25.

Once the moving party has satisfied its
responsibility, the burden shifts to the non-movant to show
the existence of a genuine issue of material fact. *See*
*Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N,

5

2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 U.S. Dist. LEXIS 51790, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

    While the court is to view all evidence and factual inferences in a light most favorable to Pilot, the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328,

6

1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## III. Discussion.

### A.  Defendants' Immunity Defense.

It is clear from the pleadings that the defendants were state officials at the time the action arose and are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)(Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (Alabama state officials are immune from claims brought against them in their official capacities.). Therefore, the defendants are entitled to absolute immunity from Plaintiff's claims asserted against them in their official capacities.  *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their

official capacity for monetary damages are immune from suit under the Eleventh Amendment).

As to the claims of excessive force, failure to intervene and train asserted against the defendants in their individual capacities, the defendants argue that they are entitled to qualified immunity.[3] (Doc. 25 at 6-7).

It is clear in the Eleventh Circuit, however, that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held

---

[3]     The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982),. (citations omitted); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.").

personally liable for his nonfeasance." *Id.* (citations omitted).  As explained by the Eleventh Circuit, "[t]here is simply no room for a qualified immunity defense when the plaintiff alleges such [] violation[s]."[4] *Id.*  Accordingly, in answering the questions of whether the facts alleged/established by Pilot make out violations of his Eighth Amendment rights, the undersigned looks, in turn, at the force utilized by the defendant officers.

### B.   Supervisory Liability.

In his complaint, Pilot asserts claims against ADOC Commissioner Jefferson Dunn, Warden Walter Myers, and Captain Ronzella Howard for being "responsible for [the] actions conduct and training of every [corrections] officer."  (Doc. 4 at 5-6).  Such claims are rooted in the theory of *respondeat superior* and are not actionable in a § 1983 action.

In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal connection between each defendant's "actions,

---

[4]   We created this rule because an excessive-force violation of the Eighth . . . Amendment[], 'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution . . . .'" *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009), quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-1322 (11th Cir. 2002) (other citation omitted).

orders, customs, policies, or breaches of statutory duty
and the alleged deprivation of his constitutional rights."
*Frankum v. Chapman*, 2009 U.S. Dist. LEXIS 133760, 2009 WL
1118875, *3 (S.D. Ala. 2009) (citations omitted).
Liability for an alleged constitutional violation cannot be
established on the basis of a theory of *respondeat
superior*. *See Edwards v. Ala. Dep't of Corrs.*, 81 F. Supp.
2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat
superior* is not sufficient to support [a] § 1983 claim. . .
.").

> "It is well established in this Circuit that
> supervisory officials are not liable under § 1983
> for the unconstitutional acts of their
> subordinates on the basis of respondeat superior
> or vicarious liability." *Hartley v. Parnell*, 193
> F.3d 1263, 1269 (11th Cir. 1999) (internal
> quotation marks and citation omitted); *Gonzalez[
> v. Reno]*, 325 F.3d [1228,], 1234, 2003 WL
> 1481583, at *4 (concluding supervisory officials
> are not liable on the basis of respondeat
> superior or vicarious liability). Instead,
> supervisory liability under § 1983 occurs either
> when the supervisor personally participates in
> the alleged unconstitutional conduct or when
> there is a causal connection between the actions
> of a supervising official and the alleged
> constitutional deprivation. *Gonzalez*, 325 F.3d at
> 1235, 2003 WL 1481583, at *5; *Brown v. Crawford*,
> 906 F.2d 667, 671 (11th Cir. 1990). The necessary
> causal connection can be established "when a
> history of widespread abuse puts the responsible
> supervisor on notice of the need to correct the
> alleged deprivation, and he fails to do so."
> Gonzalez, 325 F.3d at 1234, 2003 WL 1481583, at
> *5 (quoting *Braddy v. Fla. Dept. of Labor &
> Emp't*, 133 F.3d 797, 802 (11th Cir. 1998));
> *Brown*, 906 F.2d at 671. Alternatively, the causal
> connection may be established when a supervisor's

> "'custom or policy ... result[s] in deliberate
> indifference to constitutional rights'" or when
> facts support "an inference that the supervisor
> directed the subordinates to act unlawfully or
> knew that the subordinates would act unlawfully
> and failed to stop them from doing so." *Gonzalez*,
> 325 F.3d at 1235, 2003 WL 1481583, at *5 (quoting
> *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.
> 1991)); *Hartley*, 193 F.3d at 1263; *see also Post
> v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61
> (11th Cir. 1993). "The standard by which a
> supervisor is held liable in [his] individual
> capacity for the actions of a subordinate is
> extremely rigorous." *Gonzalez*, 325 F.3d at 1234,
> 2003 WL 1481583, at *4 (internal quotation marks
> and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

In the current action, Plaintiff claims Defendants Dunn, Myers, and Howard, solely as supervisors of Holman Correctional Facility, are liable for the actions and conduct of the officer defendants who responded to the

scene of the attempted escape.  (Doc. 4 at 5-6).  Reading
the facts in the light most favorable to Plaintiff,
however, the undersigned finds no support for Plaintiff's
claim.  Contrarily, the record supports that neither
Defendant Dunn, Myers, nor Howard participated in the
alleged conduct comprising Plaintiff's excessive force
claim.[5]  Beyond Plaintiff's conclusory allegation that these
Defendants are the "head of all procedure policy and
officials" at the prison, the record is completely void of
facts that Defendants initiated any custom or policy as
supervisors that can be linked to the alleged
constitutional deprivation.  (*Id.*); *Bennett v. Parker*, 898
F.2d 1530, 1533-34 (11th Cir. 1990) (Unsupported,
conclusory allegations are insufficient to defeat a motion
for summary judgment.).  Instead, the record evidence
supports the conclusion that Defendants Dunn, Myers, and
Howard had no part, direct or indirect, in the alleged
violation.  As such, it is recommended that Defendants

---

[5]     Commissioner Jefferson Dunn affirms in his submitted
affidavit that he was not appointed as commissioner until
April 1, 2015; thus, he has no knowledge of the complained
of incident and is not liable for any constitutional
violation occurring on November 10, 2014.  (Doc. 25-3).
Additionally, Captain Ronzella Howard was transferred from
Holman Correctional Facility on July 16, 2014; therefore,
she was not present at the prison at the time the complaint
arose.

Dunn, Myers, and Howard be granted summary judgment and the claims against them dismissed.

### C.   Defendants Sergeant Smith and Officer Boudreaux.

Plaintiff names Defendants Smith and Boudreaux as the defendants liable for using excessive force against him on November 10, 2016.  Specifically, Pilot claims that, despite complying with the order to surrender and lying facedown on the ground, Smith repeatedly hit him with a baton, intentionally broke his finger, and held him down on the ground while Officer Boudreaux "kicked him several times in the head and face until he passed out."  (Doc. 4 at 9).  Pilot further contends that he received multiple injuries due to the force used and was denied medical treatment for the sustained injuries. (*Id.*).  However, in support of the motion for summary judgment, the defendants have provided evidence contradicting Pilot's accusations, and Pilot has not opposed the motion. [6]

---

[6]     On September 28, 2016, Pilot was ordered to submit a response to Defendants' Motion for Summary Judgment by November 2, 2016.  (Doc. 26).  To date, Pilot has failed to respond to the motion, file any additional pleadings with the court, or dispute the motion in any form.  Plaintiff's lack of response has left his position unsupported factually.  In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.  *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d

As such, Pilot has failed to carry his burden at this stage of summary judgment to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Moreover, and in the alternative, the law pertaining to the issues presented indicates a decision in favor of granting summary judgment for Defendants.

To establish his claim, Pilot must prove both an objective and subjective component. That is, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Defendants "'acted with a sufficiently culpable state of mind,'" *i.e.*, that the defendant acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 & 8, 112 S. Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citation omitted); *see also Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) ("[W]e think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

---

686 (2007)).

sadistically for the very purpose of causing harm.'").  In
making this determination, the court considers the need for
the application of force, the relationship between that
need and the amount of force used, the threat reasonably
perceived, any efforts made to temper the severity of a
forceful response, and the extent of injury suffered.
*Hudson*, 503 U.S. at 7, citing *Whitley*, 475 U.S. at 321.

        The record before the court, however, supports finding
that Defendants used force in a good faith effort to
restore discipline, specifically, to overt a prison escape
and not for the purpose of causing harm.  The courts
recognize that corrections officials often must make
decisions "'in haste, under pressure, and frequently
without the luxury of a second chance." *Hudson*, 503 U.S. at
6 (citing *Whitley*, 475 U.S. at 320).  In the case at hand,
the defendants were seeking to regain control and custody
of four inmates who were actively attempting to escape from
prison.  Such a situation appears to exemplify a risky and
"pressured" situation where officers are given deference.
Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104
L. Ed. 2d 443 (1989)("[P]olice officers are often forced to
make split-second judgments – – in circumstances that are
tense, uncertain, and rapidly evolving – – about the amount
of force that in necessary in a particular situation.").

Moreover, an inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *West v. Sconyers*, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished).  "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." *Id.* However, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Skrtich*, 280 F.3d at 1303 (citations omitted). However, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists."  *Id.* at 1304 (citations omitted).

The record reveals the defendants responded to the escape scene with no knowledge of the potential weapons the attempted escapees possessed but were aware that the inmates had managed to leave their units undetected and pass through the first fenced area of the prison. (Doc. 25-8 at 1).  The Incident Report and Defendants' submitted affidavits confirm that Pilot refused multiple orders to surrender facedown on the ground[7] (Doc. 25-1; Doc. 25-6;

---

[7]    Defendant Smith affirms that he "gave inmate Pilot several orders to lay face down on the ground; however, he refused all orders given.  I grasped inmate Pilot by his

16

Doc. 25-8); furthermore, increasing the dangerousness of the situation, Pilot ran from the defendants once officers attempted to apprehend him.  (Doc. 28-8).  Defendant Boudreaux asserts that he used his baton, swinging it at Pilot's arms and legs, in attempt to seize Pilot.[8]  (Doc. 25-8).  Accordingly, the record reveals force was used to compel compliance, not "maliciously and sadistically to cause harm.  *Hudson*, 503 U.S. at 6-8.  Moreover, the record, which confirms that the use of force immediately ceased once Pilot was in custody,[9] is void of evidence that

---

arms and placed him face down on the ground.  Inmate Pilot was immediately handcuffed and all force ceased."  (Doc. 25-6).

[8]    Specifically, Boudreaux affirms in his affidavit that due to Pilot's refusal to surrender, Boudreaux used his baton and attempted to:

> strike inmate Pilot on his ulnar nerve (inner arm) and radial nerve (top forearm) and also tried to strike inmate Pilot on his peroneal nerve (upper thigh) and femoral nerve (inner thigh) of his legs to prevent him from escaping and to get him to comply with the orders to lie face down on the ground.

> After inmate Pilot complied with my command to lie down on the ground he was placed in handcuffs.  At no time did I kick inmate Pilot in his face or head.  After inmate Pilot was handcuffed, he was lifted to his feet and he walked on his own power with the other two inmates to Holman's Health Care Unit for medical assessments.

(Doc. 25-8 at 1-2)
[9]    The immediate offer of medical assistance demonstrates an effort to temper the severity of the response. *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) (per

17

Pilot was hit or kicked in the head during the complained of incident. (Doc. 25-1; Doc. 25-4; Doc. 25-8).

Specifically, the submitted body chart refutes Plaintiff's claim that Defendants beat him or that he was denied medical treatment following the applied force. In fact, the record reveals that following the incident Pilot was taken directly to the healthcare unit and examined for possible injuries.[10] (Doc. 25-1). All sustained injuries are labeled and explained on the "body chart" and include approximately four lacerations (one to Pilot's right eyebrow, one located above the right eyebrow, one in between the eyebrows, and one in the left corner of his lip) and discoloration underneath Pilot's left eye and left cheek were observed. (*Id.*). Notably, Pilot presented to the healthcare unit following the incident with "even, non-labored breathing" and walking completely on his own — contrary to indications of a severe beating as alleged in Pilot's complaint. (*Id.*). Moreover, the body chart reveals no evidence (or even verbal complaints) of a broken right finger, bruised and cracked ribs, a busted right eardrum, a sprained right wrist, or bruising of the entire right side of his body, as Pilot alleges in his complaint.

---

curiam).

[10]    A Body Chart was completed at 6:20 a.m., on November 10, 2016, following the escape attempt. (Doc.25-2).

(Doc. 4 at 8).  And, while the lack of a severe injury does not negate an excessive force claim, it is relevant to a court's inquiry. *Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511, 513 (11th Cir. 2013) (quoting *Wilkins*, 559 U.S. at 38)("[A] lack of serious injury is relevant to the inquiry, '[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts."); *Stallworth v. Tyson*, 578 F. App'x 948, 953 (11th Cir. 2014) ("Although the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied, it is not solely determinative of an Eighth Amendment claim. . . . Instead, the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted."); *Thomas*, 614 F.3d at 1304 ("in the excessive-force context, contemporary standards of decency may be violated even where no significant injury is evident.").  In the current action, the relatively minor injuries of facial lacerations support the defendants' version of events; that is, the injuries coincide with those likely sustained if one is forcibly restrained to the ground as claimed by Defendants in their submitted

affidavits in support for their (unopposed) motion for summary judgment.

The undersigned concludes after a thorough review of the record, and the lack of opposition or response from Plaintiff, Defendants use of force against Pilot (a prisoner sentenced to life without parole, who was attempting to escape from prison, and who refused to obey orders to surrender himself) was applied 'in a good faith effort to maintain or restore discipline [and not] maliciously or sadistically to cause harm.' *Skirtch*, 280 F.3d at 1300 (internal quotation omitted).  Thus, it is recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's claims be dismissed, as Plaintiff has failed to prove a constitutional violation of excessive force.

**D.   Defendants Moore, Pace, and Tait.**

As to the remaining defendants, Pilot claims Defendants Moore, Pace, and Tait are liable for failing to intervene on his behalf and stop the excessive force used against him.

When an officer observes excessive force being used against an inmate or suspect and, having both the time and ability to intervene, fails to do so, the officer may be liable for failure to intervene.  *Sanchez v. Hialeah Police*

*Department*, 357 F. App'x 229, 234 (11th Cir. 2009)
(defendant officer was on the same side of the car as the
other officer who began beating plaintiff; Eleventh Circuit
found under these facts he could be held liable for failure
to intervene under § 1983); *see Byrd v. Clark*, 783 F.2d
1002, 1007 (11th Cir. 1986) ("If a police officer, whether
supervisory or not, fails or refuses to intervene when a
constitutional violation such as an unprovoked beating
takes place in his presence, the officer is directly liable
under Section 1983.").

In the case at hand, however, Defendant Moore was not
working as a corrections officer at Holman Correctional
Facility on the date this complaint arose (Doc. 25-7), and
Officers Tait and Pace affirm that they both were actively
engaged in apprehending other inmates at the time of the
complained of incident and have no knowledge of the alleged
force used against Pilot.  (Docs. 25-9, 25-10).  The
evidence presented shows that the responding officers
located three inmates, "sitting in a ditch" at the back
gate of the prison.  (Doc. 25-9).  The inmates ignored all
initial orders to surrender prior to the officers entering
the gated area, and once the officers entered, the three
inmates split up - causing Pace, Tait, Smith, and Boudreaux
to go in separate directions to effectively apprehend the

inmates. (*Id.*). Given the totality of this situation, the undersigned determines that Tait nor Pace was in a position, in close proximity, or had the ability to intervene during the complained of incident.

In the alternative, inasmuch as the court has concluded that no reasonable jury could find that Defendants Smith and Boudreaux used excessive force against Pilot, no reasonable jury could find that Defendant Officers Pace and Tait were liable for failing to intervene. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009); *McBride v. Rivers*, 170 F. App'x 648, 658 (11th Cir. 2006)(defendant could not be liable for failing to intervene after court determined no excessive force had been used).

Thus, it is recommended that Defendants Moore, Pace, and Tait be granted summary judgment, and the claims against them dismissed.

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted, and Plaintiff's action be dismissed with prejudice.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 14th day of November 2016.

s/BERT W. MILLING, JR.
BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE